IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robert Michael Shockley,          ) | Civil Action No. 2:14-cv-1699-RMG-MGB |
|                                   ) | |
|                        Plaintiff, ) | |
|                                   ) | |
|            v.                     ) | |
|                                   ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin,                ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social     ) | |
| Security,                         ) | |
|                                   ) | |
|                        Defendant. ) | |
| _____   ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Robert Michael Shockley, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 45 years old on his alleged disability onset date of March 3, 2006. (R. at 9, 18.) Plaintiff claims disability due to, *inter alia*, mild lumbar spine disc bulging with mild sciatica, mild left knee chondromalacia, left carpal tunnel syndrome, and non-dominant left upper extremity intermittent sensory fracture. (R. at 11.) Plaintiff has a limited education and past relevant work as a construction worker. (R. at 18.)

Plaintiff filed an application for DIB on November 17, 2010. (R. at 9.) After his application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on September 21, 2012. (R. at 9.) In a decision dated November 16, 2012, the ALJ found that Plaintiff was not disabled. (R. at 9-19.) The Appeals Council denied Plaintiff's request for review,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.
>
> (2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 3, 2006 through his date last insured of December 31, 2006 (20 CFR 404.1571 *et seq*.).
>
> (3) Through the date last insured, the claimant had the following severe impairments: mild lumbar spine disc bulging with mild sciatica, mild left knee chondromalacia, left carpal tunnel syndrome and non-dominant left upper extremity intermittent sensory fracture (20 CFR 404.1520(c)).
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a), or to lift/carry ten pounds frequently and less than ten pounds occasionally as well as stand/walk two hours of an eight-hour workday. I also find the claimant is unable to walk on uneven terrain, balance, crawl, operate left leg controls or climb ladders/ropes/scaffolds, but is occasionally able to stoop, crouch, kneel, feel with the left upper extremity and climb stairs/ramps. I further conclude the claimant should avoid exposure to hazards such as heights or dangerous machinery.
>
> (6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on October 3, 1960 and was 46 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

>    (8)     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).
>
>    (9)     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).
>
>    (10)    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
>    (11)    The claimant was not under a disability, as defined in the Social Security Act, at any time from March 3, 2006, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  See 20 C.F.R. § 404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See

SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, Plaintiff asserts the ALJ erred "in failing to properly consider medical evidence post the date last insured that permitted an inference of linkage with the Plaintiff's pre-date last insured condition;" in summarily dismissing the opinions of Plaintiff's treating physician and treating psychologists; in failing to find Plaintiff illiterate; and failing to include various non-exertional impairments in her hypothetical to the Vocational Expert ("VE"). (Dkt. No. 8 at 14-43.)

**A.    Failure to Properly Consider Medical Evidence After Date Last Insured**

In the instant case, Plaintiff alleged disability onset date of March 3, 2006, and the parties agree his Date Last Insured ("DLI") was December 31, 2006. (See R. at 9, 18, 11; see also Dkt. No. 8 at 20; Dkt. No. 9 at 2.) Plaintiff asserts the ALJ erroneously rejected the opinions of Dr. Waid, Dr. Brabham, and Post Trauma Resources because their opinions and assessments were given after the DLI. (See Dkt. No. 8 at 22-23, 27.) Citing to Moore v. Finch, 418 F.2d 1224 (4th Cir. 1969), and Bird v. Commissioner, 699 F.3d 337 (4th Cir. 2012), Plaintiff asserts the ALJ's "failure to give retrospective consideration to the . . . medical evidence created after [Plaintiff's] DLI was an error of law" requiring reversal of the Commissioner's decision. (Dkt. No. 8 at 29; see also id. at 14-29.) The Commissioner contends Plaintiff's argument "lacks merit" because "there is no evidence that Plaintiff received treatment for any mental impairments or had a severe brain injury before his insured status expired on December 31, 2006. . . ." (Dkt. No. 9 at 14.) The undersigned concludes, however, that it is Defendant's argument that lacks merit.

The parties agree that Plaintiff was injured at work on March 3, 2006, and that he briefly lost consciousness after that injury. During his hospital stay immediately after the injury, Plaintiff's head CT indicated a left soft tissue hematoma, frontal and parietal regions, and sinusitis, but was otherwise normal. (R. at 210.) The ALJ stated, *inter alia*, "[w]hile there is a later assessment of traumatic brain injury (TBI), the CT scan at the time of his injury showed only a soft tissue hematoma. In addition, the claimant has not received any specific treatment for a head injury (see Exhibit 1F)." (R. at 12.)

5

The evidence Plaintiff contends the ALJ erroneously rejected includes opinion evidence from Dr. Brabham, Dr. Waid, and Dr. Bergmann. Dr. Brabham evaluated Plaintiff on January 15, 2009, and he clearly linked Plaintiff's traumatic brain injury to the Plaintiff's March 2006 work injury, stating,

> [T]here can be no reasonable professional doubt that the combination of conditions, symptoms and behaviors are **best attributed to a (physical) traumatic brain injury, which resulted from the only reasonable causal event, the injuries while working on 03-03-06**.

(R. at 254 (emphasis added).) Dr. Brabham also listed the following to support his conclusion that Plaintiff suffered a brain injury:

> [Plaintiff] is easily annoyed, and has a marked loss of patience with others; he also has major anger management issues, such as road rage, he has difficulty with word and name recall . . . ; he has problems with driving, including making mistakes, and getting "confused" in areas he has traveled for years; he has also experienced physical changes often noted such as sensitivity to light, noise, and temperature extremes; he also has major balance issues; and quite very pronounced ringing of the ears.

(R. at 254.) Dr. Brabham opined that "[a]s a result of [Plaintiff's] combination of medical conditions, most notably his brain injury, and resulting functional limitations, **all resulting from his on-the-job injuries in 2006**, he is unable to perform any substantial gainful activity . . . ." (R. at 256 (emphasis added).) In assessing Dr. Brabham's opinion, the ALJ stated,

> Robert Brabham, Ph.D., performed a consultative psychological examination on the claimant in January of 2009, and assessed the claimant with depressive/anxiety/pain disorders and cognitive disorders secondary to a traumatic brain injury. Nevertheless, the claimant reported he had no history of mental health treatment, which brings the true severity of the claimant's mental problems into question. In addition, the claimant admitted he was able to handle basic hygiene routines without assistance and do light household chores, which suggested the claimant was able to function on some level. Furthermore, the claimant exhibited intact orientation with no signs of hallucinations or delusions. Hence, I find the claimant's mental disorders are not severe. Moreover, Dr. Brabham opined the claimant was unable to sustain gainful employment (Exhibit 4F). However, I give little weight to Dr. Brabham's opinion since the issue of whether a claimant is able to work is a determination reserved for the Commissioner. Plus, *Dr. Brabham's opinion did not precede the claimant's date last insured*.

(R. at 16 (emphasis added).)

The ALJ rejected Dr. Waid's opinions for much the same reason. In a letter dated February 19, 2009, Dr. Waid stated, *inter alia*,

> I am in agreement with Drs. Troyer and Deysach that [Plaintiff] is experiencing residual neurocognitive impairments primarily affecting his attentional/executive functioning skills due to having sustained a mild traumatic brain injury (physical brain injury). I believe the impairment ratings provided by Dr. Troyer are appropriate.

(R. at 259.) In addressing Dr. Waid's opinions, the ALJ stated,

> In September of 2007, L. Waid, Ph.D., administered a neuropsycholgical evaluation on the claimant and diagnosed the claimant with pain/mood/cognitive disorders and borderline intellectual functioning with a global assessment function (GAF) score of 50 (indicating serious symptoms/difficulties. I give little weight to this GAF score since there are no standards for clinicians when estimating GAF scores. In addition, in February of 2009, Dr. Waid reported the claimant had a traumatic brain injury with multiple traumas. Dr. Waid noted the claimant had been assessed with a 14% whole person impairments rating, based upon the American Medical Associates Guides to the Evaluation of Permanent Impairment. Nonetheless, Dr. Waid also reported the claimant had made significant treatment gains (Exhibit 5F). In addition, *Dr. Waid's opinions were given after the claimant's date last insured*.

(R. at 17 (emphasis added).)

On January 16, 2008, Dr. Bergmann of Post Trauma Resources listed the following DSM-IV diagnosis as to Plaintiff:

| | |
|---|---|
| Axix I | 307 89 Pain Disorder Asoc w/ Psychological Factors and Medical Condition, chronic (Principal) |
| | 296 22 Major Depressive Disorder, Single Episode, Moderate, chronic |
| Axis II | V71.09 No Diagnosis or Condition on Axis II |
| Axis III | chronic pain |
| Axis IV | vocational stressors |
| | involvement in workers compensation system |
| | interpersonal stressors |
| Axis V | Current GAF 42 |
| | Highest Past Year |

(R. at 270.) As to Dr. Bergmann, the ALJ stated,

> From 2008 to 2010, the claimant was treated at Post Trauma Resources for pain/depressive disorders with a GAF of 42, which indicated serious symptoms/difficulties. However, I assign little weight to this GAF score since there are no standards for clinicians when estimating GAF scores and the estimates reflect observations only as of that particular moment and may consider various non-medical

7

>     factors. In addition, *the claimant was assessed and treated at Post Trauma Resources after his date last insured*.

(R. at 17 (emphasis added).)

In Bird v. Commissioner, 699 F.3d 337 (4th Cir. 2012), the plaintiff argued the "ALJ erred in failing to give retrospective consideration to medical evidence created after his DLI," and the Fourth Circuit agreed. Bird, 699 F.3d at 340-41. The plaintiff in Bird presented no medical records preceding March 31, 2005, his DLI; the first medical record was from June 2006, wherein the screening test for depression was negative. Id. at 339. A psychologist diagnosed the plaintiff, in September of 2006, as having Post Traumatic Stress Disorder (PTSD); in September of 2007 that same psychologist noted that the plaintiff's symptoms had persisted since his return from Vietnam. Id. The ALJ concluded that although the plaintiff suffered from PTSD before his DLI, his "impairment was insufficiently severe to qualify him for receipt of Social Security disability benefits." Id. at 340. In reaching this conclusion, the ALJ "relied in part on the lack of medical evidence created before [the plaintiff's] DLI." Id.

On appeal, the plaintiff argued the ALJ "did not give proper consideration to all the relevant evidence," and the Fourth Circuit agreed. Id. The Fourth Circuit held that evidence produced after a claimant's DLI was generally admissible as long as "the evidence permits an inference of linkage with the claimant's pre-DLI condition" and that "retrospective consideration of medical evidence is especially appropriate when corroborated by lay evidence." Id. at 342.

Although Defendant argues that "retrospective consideration of Plaintiff's post-DLI evidence was not required" because "there is no 'inference of linkage,'" the undersigned disagrees. (See Dkt. No. 9 at 14.) Defendant states, *inter alia*, "None of these impairments were diagnosed or treated before Plaintiff's insured status expired on December 31, 2006, and thus, there is no 'inference of linkage' with Plaintiff's impairments while he was insured for disability benefits and retrospective consideration . . . is not required." (Dkt. No. 9 at 15.)

8

But of course, the plaintiff in Bird was not diagnosed with or treated for PTSD before his insured status expired. See generally Bird, 699 F.3d 337. In the instant case, however, the medical records–*even those prior to Plaintiff's DLI*–provide the "inference of linkage" discussed in Bird. Dr. Troyer, one of Plaintiff's treating physicians, stated on a May 5, 2006 evaluation:

> IMPRESSION: Multiple trauma, possible closed head injury with loss of consciousness and skull hematoma . . . .
>
> RECOMMENDATIONS: I recommended to Mr. Shockley that I think his closed head injury at this point could be best evaluated with neuropsychological testing . . . .

(R. at 514.) Dr. Troyer's notes from June 19, 2006 again indicate Dr. Troyer's "impression continues to be that of multiple trauma with possible closed head injury and post head injury-type headaches . . ." (R. at 516.) In a letter dated July 28, 2006, Dr. Troyer states, *inter alia*,

> This patient has been under my care with a history of fall and multiple trauma that included closed head injury, lower extremity dysfunction as well as ongoing back pain at this point.
>
> I have referred the patient to Neuropsychology and apparently he has not been approved for this visit. A neuropsychology evaluation is necessary to fully evaluate his closed head injury from the accident that occurred with the fall from the 8 foot ladder where he was knocked unconscious.

(R. at 519.) Dr. Troyer's notes from September 18, 2006 indicate that his impression was "[m]ulti-trauma, traumatic brain injury." (R. at 520.) Dr. Troyer's notes from September and November of 2006 indicate that the medications he prescribed for Plaintiff's headaches had not been successful. (See R. at 520-21, 523-24.) Dr. Troyer's records from November 11, 2008 state, *inter alia*,

> [Plaintiff's] traumatic brain injury can be best rated from table 13-5, page 320, and his main core of memory fits into the category of questionable 0.5 with orientation, judgement, problem solving, community affairs, hobbies, and personal care all around 0.5 as well. From table 13-6, he fits into class I, which is 14% whole person impairment from his atraumatic brain injury.

(R. at 541.) In addition, Plaintiff testified at the hearing that his head was injured in March of 2006 when trusses fell on him at work. (R. at 40-41, 43-46.) Plaintiff testified that he began to have

9

headaches, so severe that he had to avoid light, and difficulty with concentration, at the time of the injury. (R. at 43-46.)

Contrary to Defendant's argument, the undersigned concludes there is a rather clear "inference of linkage" between Plaintiff's post-DLI evidence and his condition prior to his DLI.[2] Accordingly, the ALJ's rejection of that evidence because it was created after Plaintiff's DLI was an error of law. See Bird, 699 F.3d at 342-43; see also Foshee v. Astrue, 4:11-2912-RMG, 2013 WL 310657, at *4 (D.S.C. Jan. 25, 2013) (stating, *inter alia*, "The post date last insured medical evidence clearly 'permits an inference of linkage' by addressing the same complaints of severe pain in the same anatomical area of the body producing, per the claims of the Plaintiff, the same disabling impairments."); Edwards v. Colvin, Civ. A. No. 5:13-CV-8, 2015 WL 114296, at *3-6 (W.D.N.C. Jan. 8, 2015) (remanding where ALJ stated that the plaintiff's "lipomyelomeningocele was not a medically determinable impairment until approximately five years after her insured status expired since the evidence does not contain objective findings until 2009" where "[t]here is evidence in the record supporting the proposition that Plaintiff suffered from lipomyelomeningocele prior to her DLI"). Based on the foregoing, the undersigned recommends reversing and remanding this case.

### B.  **Remaining Claims of Error**

Because the Court finds the ALJ's rejection of Plaintiff's post-DLI evidence is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, including, *inter alia*, Plaintiff's allegations that the ALJ erred "in summarily dismissing the opinions of Mr. Shockley's treating physician, Devin Troyer." (Dkt. No. 8 at 30.)

---

[2] The undersigned notes that Bird was decided on November 9, 2012, and the ALJ's decision is dated November 16, 2012. See generally Bird, 699 F.3d 337; R. at 19.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

June 16, 2015
Charleston, South Carolina